# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1808

_____

Abubakarr Fofanah,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Petitioner,　　　　　*
　　　　　　　　　　　　　　　　　*　Petition for Review of an
　　　v.　　　　　　　　　　　　　*　Order of the Board of
　　　　　　　　　　　　　　　　　*　Immigration Appeals.
Alberto Gonzales, Attorney General　*
of the United States of America,　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Respondent.　　　　　*

_____

Submitted:  January 13, 2006
Filed:  May 11, 2006

_____

Before LOKEN, Chief Judge, McMILLIAN[*] and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

Petitioner Abubakarr Fofanah is a native and citizen of Sierra Leone who came to the United States from Guinea by stowing away on a cargo ship. When the Department of Homeland Security commenced removal proceedings, Fofanah conceded removability and applied for asylum, withholding of removal, relief under

_____

[*]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E. The opinion is consistent with the views expressed by Judge McMillian at the conference following the oral argument.

the Convention Against Torture ("CAT"), and alternatively for voluntary departure. Following an evidentiary hearing, the Immigration Judge ("IJ") issued an oral decision denying all relief on alternative grounds. Fofanah appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision to deny relief on the ground that Fofanah's testimony was not credible. Fofanah petitions for judicial review of that final order. See 8 U.S.C. § 1252. We deny the petition.

For ten years beginning in 1991, the people of Sierra Leone suffered from a violent and crippling civil war between the government and Revolutionary United Front (RUF) rebels allied with Charles Taylor's National Front forces in neighboring Liberia. Tens of thousands of civilians died and some one-third of the population was displaced as the combatants fought for control of Sierra Leone and its rich diamond mines. The RUF held as much as one-half the country in 1999 and 2000 but suffered military defeats in early 2001 and agreed to a cease-fire in May 2001. The Department of State Country Reports for 2002 reported that the conflict officially ended in January 2002, with President Ahmed Kabbah's government controlling the entire country, assisted by U.N. peacekeepers. Kabbah was reelected with a large majority in Parliament in May 2002. Thereafter, the Department of State terminated temporary protected status for Sierra Leone refugees effective May 2004. See 68 Fed. Reg. 52407 (Sept. 3, 2003).

At his evidentiary hearing, Fofanah testified that he fled Sierra Leone on March 16, 2000, to escape the civil war violence after RUF rebels murdered his father. Fofanah claimed the RUF killed his father because he was a wealthy diamond dealer; a member of the minority Madingo tribe, like President Kabbah; and a Muslim Imam who had sided with the Kabbah government. After fleeing his home town of Koidu, Fofanah walked to nearby Guinea, stayed briefly at a U.N. refugee camp, and then paid $500 to stow away on a cargo ship bound for the United States. Some four weeks later, he was taken ashore in a small boat, arriving in San Jose, California, on

April 12, 2000. His mother and three siblings did not flee with him, and he has not heard from them since.

Fofanah further testified that in December 1999 he was captured by RUF rebels and told that if he did not join their force, he would be killed. When he initially refused, he was beaten. He showed the court a two-inch scar on his back below his left shoulder and another across his right knee, the result, he explained, of the beatings. Fofanah testified that, after the beatings, he served briefly as an armed RUF soldier, participating in at least four armed-encounters with government forces but never shooting, dismembering, cutting, or killing anyone. After two weeks, Fofanah said, he escaped by running away as the rebels headed off for an attack.

Following the hearing, the IJ found that Fofanah was ineligible for any relief because, among other reasons, his testimony was not credible in material respects. The IJ noted inconsistencies in Fofanah's explanation of when and why his father was killed, with no documents or other objective evidence supporting his assertion that his father was killed for political, religious, and ethnic reasons, rather than because he was a wealthy diamond dealer, which is not a protected ground. The IJ also did not credit Fofanah's testimony that he was abducted and beaten by RUF rebels in December 1999 because that incident was not mentioned in his asylum application or during his credible fear interview. The IJ further noted that medical reports by Fofanah's treating physicians in this country did not mention the beatings and were inconsistent with his testimony as to when he last saw his mother and siblings and whether members of his immediate family are living in the United States. The IJ expressed concern about Fofanah's Sierra Leone passport, noting that the signature on the passport "is different than [his] regular signature." Finally, the IJ did not credit Fofanah's testimony as to when and how he arrived in the United States and came to Minnesota because it was completely undocumented and unsupported. "The Court finds it quite interesting," the IJ observed, "that all of the people who could possibly corroborate [Fofanah's] story are unreachable or have moved."

Fofanah appealed the IJ's decision to the BIA. Addressing only the IJ's adverse credibility finding, the BIA dismissed the appeal:

> We agree with the Immigration Judge that [Fofanah] has not presented a credible claim for the relief he seeks. Specifically, we agree that [his] evidence contradicts itself regarding when [his] father died, why his father died, and whether [he] has seen his family members since his father's death. Moreover . . . [he] failed to adequately explain why he did not mention his own 2-week abduction by RUF soldiers on his application, during his credible fear interview, or to his doctors. Inasmuch as [Fofanah] has also presented only questionable evidence regarding his treatment during this alleged abduction, we find no reason to disturb the Immigration Judge's adverse credibility finding.

(Citations omitted.) Because the BIA did not consider the IJ's alternative grounds for denying relief, those issues are not properly before us. See INS v. Ventura, 537 U.S. 12 (2002). Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA. See Falaja v. Gonzales, 418 F.3d 889, 894 (8th Cir. 2005).

On appeal, Fofanah argues that substantial evidence does not support the adverse credibility finding because his testimony was sufficiently detailed and consistent, minor discrepancies such as the date of his father's death are explainable by language barriers and are immaterial, his lack of corroborating testimony and documents is understandable, and his failure to tell the same story in his prior asylum application and interview are attributable to the post-traumatic stress he has suffered since leaving violence-plagued Sierra Leone.

An IJ's findings of fact when affirmed by the BIA are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Credibility findings in particular are entitled to much weight because the IJ sees the witness testify and is therefore in the best position to determine

his or her credibility. Ismail v. Ashcroft, 396 F.3d 970, 974 (8th Cir. 2005). Therefore, we defer to a credibility finding that is supported by "a specific, cogent reason for disbelief." Aden v. Ashcroft, 396 F.3d 966, 968 (8th Cir. 2005) (quotation omitted).

Here, the IJ and the BIA based the credibility finding on inconsistencies and inadequacies in the most critical portions of Fofanah's testimony supporting his claims of past persecution and a well-founded fear of future persecution and torture -- the circumstances surrounding his conscription by the RUF rebels, his father's death, his flight from Sierra Leone to this country, and whether members of his family are now living safely in Sierra Leone, a country whose conditions have markedly improved since Fofanah left. See Kondakova v. Ashcroft, 383 F.3d 792, 796 (8th Cir. 2004), cert. denied, 543 U.S. 1053 (2005). After careful review of the entire administrative record, we conclude that the agency's adverse credibility finding is supported by specific, cogent reasons and must therefore be upheld.

Fofanah applied for asylum, withholding of removal, and relief under the Convention Against Torture. To be eligible for asylum, he must prove that he is unwilling to return to Sierra Leone "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To be eligible for withholding of removal, he must prove to an even greater degree of certainty that persecution will occur on account of a protected status. See Al Tawm v. Ashcroft, 363 F.3d 740, 744 (8th Cir. 2004). To be eligible for relief under the CAT, he must show that it is more likely than not he would be "tortured" if removed to Sierra Leone. See 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1)-(8). As Fofanah's asylum, withholding of removal, and CAT claims were based upon the same discredited testimony, the BIA properly concluded that the adverse credibility finding is fatal to all three claims. See Alemu v. Gonzales, 403 F.3d 572, 575-76 (8th Cir. 2005).

Finally, Fofanah renews his request for voluntary departure to this court. However, we lack jurisdiction to review the denial of voluntary departure. <u>See</u> 8 U.S.C. § 1229c(f); <u>Ignatova v. Gonzales</u>, 430 F.3d 1209, 1215 (8th Cir. 2005). Accordingly, we deny the petition for review.

_____