# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3246

_____

Hazret Nanic; Jasminka Nanic,

*Petitioners*,

v.

Loretta E. Lynch,[1]

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: December 9, 2014
Filed: July 20, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Hazret Nanic and his wife, Jasminka Nanic, natives of the former Yugoslavia, petition for review of a decision of the Board of Immigration Appeals denying their applications for asylum and withholding of removal. We conclude that the Board's

_____

[1]Loretta E. Lynch is automatically substituted for Eric H. Holder, Jr., pursuant to Federal Rule of Appellate Procedure 43(c)(2).

decision was supported by substantial evidence, and that the petitioners were accorded due process, so we deny the petition.

Hazret Nanic, whom we will call Nanic, was born in Bosnia and is currently a citizen of Bosnia-Herzegovina and Croatia. He is a practicing Muslim, but he rejects the "Bosniak" label used by governments in the region to describe Muslims in Bosnia. Nanic advocates a unified Bosnia and identifies himself as Bosnian.

Nanic and his wife entered the United States in November 2006 as nonimmigrant visitors from Bosnia-Herzegovina. They were authorized to remain in the United States until June 8, 2007. On June 13, 2007, Nanic applied for asylum and withholding of removal, naming his wife on the application as a derivative beneficiary. The Department of Homeland Security denied Nanic's application and issued notices to appear, charging that the Nanics were removable for remaining in the United States after expiration of their visas.

To qualify for asylum, an alien must show that he is unable or unwilling to return to his country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A). If an alien establishes past persecution, then there is a presumption of future persecution. Otherwise, the alien must demonstrate a well-founded fear of future persecution that is subjectively genuine and objectively reasonable. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987); *Hassan v. Ashcroft*, 388 F.3d 661, 666 (8th Cir. 2004).

An immigration judge denied relief after an evidentiary hearing, and the Board affirmed. The Board concluded that Nanic did not demonstrate that he suffered past persecution in Bosnia-Herzegovina or in Croatia, and that he did not establish a well-founded fear of persecution if he were returned to his home country. The Board also rejected Nanic's contention that the immigration judge deprived Nanic of due process

by receiving testimony of an expert witness about country conditions and considering a document prepared by an asylum officer who interviewed Nanic. Because the standard of proof for withholding of removal is more demanding than the requirement for asylum, the Board also denied Nanic's application for withholding.

We review the Board's decision for substantial evidence, and we must uphold administrative findings of fact unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992). We review the Board's decisions on constitutional questions *de novo*.

To support his claim of past persecution, Nanic presented evidence about incidents that occurred in his homeland. He testified that in 1994, during the height of the civil war in the Balkans, he and his brother Osman were stopped by the Croatian police at a checkpoint. When the police asked his nationality, Nanic responded "Bosnian," and the police pulled him out of the car and started to beat him. His brother spoke to the officers and asked them to stop. The officers relented and told Nanic that but for his brother, he would be dead. In May 1995, Nanic was stopped by the Croatian police a second time when he was driving in a convoy to deliver humanitarian supplies. The police hit him two or three times in the face and took him for questioning. He was interrogated and threatened with violence, but he was not harmed, and he was released after approximately twenty-four hours. Nanic also reported that his daughters were harassed at school in Croatia during 1996 or 1997 after Nanic refused to identify them as Croats or Bosniaks and insisted that they were Bosnians.

The Board found that these incidents were insufficient to establish past persecution, because minor beatings and low level harassment do not amount to persecution. A reasonable adjudicator could reach that conclusion. "[B]rief periods of detention do not necessarily constitute persecution," and "[t]he mere presence of

some physical harm does not require a finding of past persecution." *Ngure v. Ashcroft*, 367 F.3d 975, 990 (8th Cir. 2004). Persecution also "does not include low-level intimidation and harassment." *Malonga v. Mukasey*, 546 F.3d 546, 552 (8th Cir. 2008). We have upheld the denial of asylum claims involving more serious abuses than those claimed by Nanic. *E.g., Al Tawm v. Ashcroft*, 363 F.3d 740, 743 (8th Cir. 2004); *Eusebio v. Ashcroft*, 361 F.3d 1088, 1090 (8th Cir. 2004).

Nanic contends that the Board failed to consider other evidence that supported a finding of past persecution. He says that people followed him in Bosnia, and that members of the secret police came to his home and interrogated him on several occasions. But Nanic was unable to identify who followed him, and he explained only that secret police questioned him about people unknown to him and demanded to know about his work with the humanitarian organizations. This information does not add materially to the incidents discussed by the Board, and additional evidence of alleged harassment does not compel a finding of past persecution. Nanic further complains that the governments of Bosnia-Herzegovina and Croatia refuse to let him identify as a "Bosnian," as opposed to Serb, Croat, or Bosniak, but this alleged interference with Nanic's sense of self-identity does not rise to the extreme level of government action required to establish persecution.

Nanic argues that even without a finding of past persecution, he has a well-founded fear of future persecution if returned to his home country. He cites his inability to express his nationality as Bosnian and fear that he would be harmed by political enemies who disagree with his desire for a unified Bosnia. Nanic testified that a friend warned him to cease declaring himself as Bosnian, and another friend told him that if he continued to identify as Bosnian, then he would be "liquidated overnight." He bolsters his argument with claims that his brother Izet was murdered and that a like-minded friend named Dr. Ljubijankic was killed because of his political views.

The Board determined that Nanic had no well-founded fear of persecution, and this conclusion was supported by substantial evidence. The Board upheld the immigration judge's finding that Nanic's brother and Dr. Ljubijankic were killed during military action in the civil war. Given the testimony of historian Michael MacQueen about the brother's death and contemporaneous news accounts regarding the demise of Dr. Ljubijankic, a reasonable adjudicator was not compelled to reach a contrary conclusion on that point.

Nanic's testimony about warnings from unidentified friends was too vague to compel a finding that he had a well-founded fear that is objectively reasonable, especially when members of his family continue to live in Bosnia-Herzegovina without harm, and Nanic himself returned to the country several times since 2000 after foreign travel without experiencing persecution. The Board relied on the testimony of historian MacQueen to find that Nanic's self-identification as Bosnian did not support a well-founded fear. MacQueen opined that a "good chunk" of Bosnian society still adheres to the view that they are "basically Bosnians," and that Bosnia is a "relatively peaceful place although poor." He saw no reason why Nanic could not return to his previous profession. MacQueen's testimony was substantial evidence in support of the Board's conclusion.

Nanic responds that the Board violated his due process right to a fair hearing by considering MacQueen's testimony, because the Department failed to identify MacQueen as a witness at least fifteen days in advance of the hearing, as required by Chapter 3.1(b)(ii)(A) and 4.16(b)(ii) of the Immigration Court Practice Manual. But because MacQueen's testimony was offered solely to rebut Nanic's testimony and affidavit, the fifteen-day rule likely did not apply. *Cf. Nyama v. Ashcroft*, 357 F.3d 812, 816 (8th Cir. 2004). In any event, the Department moved to admit MacQueen's testimony at a June 2011 hearing, but MacQueen did not actually testify until a January 2012 hearing, so Nanic had more than six months' notice. There was no unfair surprise.

Nanic also complains about the immigration judge's consideration of an "Assessment to Refer"—a document prepared by an asylum officer based on an interview with Nanic—because the asylum officer found that Nanic lacked credibility. Nanic says the assessment was unreliable evidence. We agree with the Board that Nanic was not prejudiced by any error in considering the assessment, because the immigration judge also received evidence that undermined the asylum officer's conclusion on credibility, and the judge found independently that Nanic was a credible witness.

The petition for review is denied.

_____