# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3460
_____

Dereck Teke Njong

*Petitioner*

v.

Matthew G. Whitaker, Acting Attorney General of United States[1]

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 15, 2018
Filed: December 28, 2018
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

Dereck Teke Njong petitions for review of a final order of removal from the Board of Immigration Appeals (BIA). The BIA affirmed an order of the immigration

---

[1]Matthew G. Whitaker has been appointed to serve as Acting Attorney General of the United States and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

judge (IJ) denying Njong's application for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under Article III of the Convention Against Torture (CAT) pursuant to 8 C.F.R. §§ 1208.16–1208.18.

I

Njong is a native and citizen of Cameroon who was placed in removal proceedings after entering the United States without proper documentation in September 2016. He requested asylum, withholding of removal, and protection under the CAT, claiming persecution on account of the political opinion he exercised in Cameroon as an active member of the Southern Cameroon National Council (SCNC). Njong describes the SCNC as "a group that advocates for the rights of . . . the English-speaking Cameroonians to separate from the French." Njong is from the English-speaking Northwestern region of Cameroon.

At his hearing before the IJ on April 19, 2017, Njong testified about his involvement with the SCNC and the harm he claims to have suffered as a result. Njong testified that after joining the group, he offered his services as a professional driver to transport documents between villages. Njong stated that he offered to transport these documents because some of the SCNC meetings are held in secret.

Njong testified that as a result of his SCNC affiliation, the Cameroonian gendarmerie[2] detained him twice and beat him during one of those detentions. First, on September 25, 2015, the gendarmerie stopped him at a military checkpoint, found SCNC documents, arrested him, and detained him for four days. Njong testified that during this detention, where he was not physically harmed, he was interrogated as to whether he was "one of those people who want to separate Cameroon to [sic] two parts." Njong claims that he did not respond, but that he was asked to sign a written

---

[2]The gendarmerie is the Cameroonian National Police.

statement acknowledging that he would be sent to the Kondengui maximum security prison if he was later found to support the SCNC or participate in its activities. According to Njong, he was released after signing the statement.

Njong testified that he was detained for a second time on May 1, 2016, after he was found transporting SCNC documents again. According to Njong, on the first and second days of his three-day detention, members of the gendarmerie beat him with sticks, stepped on him, and smashed him with their military boots. He testified that he suffered injuries to his right ankle, left elbow, and both knees. Njong also claims he was told he would be sent to the Kondengui prison, where he was afraid of going because "people that go there never come out" and some of them are killed.

Njong explained that he was eventually released with the help of a mayor whose mother is Njong's cousin. He testified that he purchased pain medication to treat his injuries after release. Thereafter, he sought ways to leave the country, as he was, and remains, afraid of being killed there because of his involvement with the SCNC. Njong claims that after he crossed the Nigerian border on May 28, he finally went to a hospital to seek medical attention for his injuries.

Finally, Njong testified about his family. He stated that he is married to Henrita Njong—who has been in the United States for years and now lives in Maryland—and that they have four children together. Henrita was at some point also a member of the SCNC in Cameroon but was granted asylum in the United States. Njong testified that Henrita filed a derivative asylee petition on his behalf, and that individuals from the United States Consulate interviewed him in Cameroon in 2014 in connection with the application. Njong claimed that, as far as he knew, his application was still pending. When asked why he did not wait for the application to be approved before coming to the United States, Njong responded that it was because of the harm he suffered at the hands of the gendarmerie in 2015 and 2016.

In a written decision, the IJ denied Njong's claims for relief on two grounds. First, the IJ found that Njong's allegations of persecution by the Cameroonian government were not credible. The IJ also found that Njong had made false statements "relating to his children." It further found "compelling" the documents submitted by the government stating that Njong had previously told U.S. consular officers that Henrita was his cousin and he had married her for immigration benefits. The IJ found, however, that there was no evidence that the marriage itself was illegal.

Second, and in the alternative, the IJ determined that even if he found Njong to be credible, Njong had failed to establish eligibility for relief. As to asylum, the IJ found that Njong had not suffered past persecution and had not shown a well-founded fear of future persecution. And consequently, the IJ found, Njong necessarily failed to meet the higher "clear probability" threshold required for withholding of removal. Finally, because Njong's claim for relief under the CAT rested on the same factual basis as his asylum and withholding claims, the IJ concluded that it necessarily failed as well. The IJ ordered Njong removed to Cameroon.

The BIA affirmed on the IJ's second ground, expressly declining to reach the issue of credibility. It affirmed the IJ's findings that the harm that Njong suffered when he was arrested and beaten in May 2016, even when considered with his prior detention, did not rise to the level of persecution, and that Njong had failed to establish a well-founded fear of future persecution. The BIA also affirmed the IJ's conclusion that Njong had failed to meet the more stringent "clear probability" standard for withholding of removal. Finally, the BIA found that Njong had failed to show that it was more likely than not that he would be tortured if returned to Cameroon, foreclosing relief under the CAT.

II

On appeal, Njong argues that the IJ erred in his credibility determination and also erred in denying all relief on the merits. At the outset, we note that because the BIA did not consider the IJ's credibility findings, that issue is not properly before us. See Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006). "Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." Id. Accordingly, we review only the BIA and IJ's findings that Njong's claims of past harm and fear of future harm fail to meet the threshold required for relief.

"We review the BIA's legal determinations *de novo*, giving due deference to the administrative agency's interpretations of the statute." Eusebio v. Ashcroft, 361 F.3d 1088, 1091 (8th Cir. 2004) (citations omitted). When reviewing the BIA's factual determinations, we employ the deferential "substantial evidence" standard. Id. "[W]e must affirm the BIA's factual decisions unless, after having reviewed the record as a whole, we determine that it would not be possible for a reasonable fact-finder to adopt the BIA's position." Id.

We find no basis for granting Njong's petition for review. With respect to asylum, Njong first argues that the agency erred in concluding that he did not suffer past persecution. We review de novo whether undisputed facts meet the legal definition of persecution, as that is a question of law. See id. (reviewing de novo and affirming the "BIA's *legal holding*" that "minor beatings and detentions . . . did not rise to the level of political persecution" (emphasis added)); see also Alavez-Hernandez v. Holder, 714 F.3d 1063, 1066 (8th Cir. 2013) (explaining that the BIA's conclusion that "conditions in Mexico had not been severe enough to constitute past persecution . . . is a question of law we review de novo").

-5-

On this record, we agree with the agency that the undisputed harm Njong claims to have suffered does not rise to the level of persecution. "Persecution is an 'extreme concept that does not encompass low-level intimidation and harassment.'" Ladyha v. Holder, 588 F.3d 574, 578 (8th Cir. 2009) (quoting Gutierrez-Olivares v. Mukasey, 533 F.3d 946, 949 (8th Cir. 2008)). Under our case law, "minor beatings and brief detentions, even detentions lasting two or three days, do not amount to political persecution, even if government officials are motivated by political animus." Eusebio, 361 F.3d at 1091. Njong's longest detention—four days—was not accompanied by physical harm. His second detention, which occurred more than seven months later, was accompanied by physical injuries that he initially treated only with pain medication, seeking medical attention almost a month later. We do not suggest that the harm Njong claims to have suffered is insignificant, but we cannot say that it was more severe than harm that we have held did not rise to the level of persecution. See, e.g., Nanic v. Lynch, 793 F.3d 945, 948 (8th Cir. 2015) (upholding agency's finding that being stopped and beaten by the police on two occasions did not rise to the level of persecution); La v. Holder, 701 F.3d 566, 571 (8th Cir. 2012) (concluding that beating and a three-day detention motivated by political animus did not amount to persecution); Samedov v. Gonzales, 422 F.3d 704, 707 (8th Cir. 2005) (concluding that neither a four-day detention nor a police beating leading to broken thumb and injuries to left arm constituted persecution).

Njong next contends that the agency erred in finding that he lacked a well-founded fear of future persecution. We review this determination for substantial evidence. See Lemus-Arita v. Sessions, 854 F.3d 476, 482 (8th Cir. 2017) (reviewing for substantial evidence "the conclusion that [petitioner] failed to demonstrate a well-founded fear of future persecution"). Njong would have a well-founded fear of persecution if, among other things, (1) there is a reasonable possibility he would be singled out individually for persecution, or (2) he is a member of a group that is subject to "a pattern or practice of persecution." Tegegn v. Holder, 702 F.3d 1142, 1145 (8th Cir. 2013); see 8 C.F.R. § 208.13(b)(2)(i), (iii)(A)–(B). A well-founded

fear of persecution has subjective and objective components. <u>Eta-Ndu v. Gonzales</u>, 411 F.3d 977, 983 (8th Cir. 2005). "The objective element requires 'credible, direct, and specific evidence that a reasonable person in the applicant's position would fear persecution if returned to [his] country of origin.'" <u>Id.</u> (alteration in original) (quoting <u>Shoaira v. Ashcroft</u>, 377 F.3d 837, 844 (8th Cir. 2004)).

On this record, regardless of whether Njong satisfies the subjective element, we cannot say that any reasonable fact-finder would be compelled to find that he has satisfied the objective element. We note that the IJ and the BIA gave conclusive weight to an almost-ten-year-old report by the Australian Refugee Review Tribunal concluding that ordinary members of the SCNC did not suffer harm that "amounts to persecution." We need not address whether conclusive reliance on this report was error, because record documents do not compel a contrary conclusion. <u>See</u> <u>Al Yatim v. Mukasey</u>, 531 F.3d 584, 587 (8th Cir. 2008) (noting that under the substantial evidence standard, we will not disturb agency's findings of fact unless petitioner meets burden of "demonstrat[ing] that the evidence he presented not only supports a contrary conclusion but *compels* it" (quoting <u>Sultani v. Gonzales</u>, 455 F.3d 878, 881 (8th Cir. 2006))). The reports and affidavits that Njong points to contain only generalized statements that the Cameroonian government represses, monitors, and even detains political dissidents and activists. The reports, however, do not reference the SCNC specifically or compel the conclusion that its members suffer harm rising to the level of persecution. Similarly, the affidavits contain only conclusory statements that "[a]ny person opposed to the oppressive and repressive" regime of Cameroon "is a target of persecution." Accordingly, we will not disturb the agency's determination that Njong failed to establish eligibility for asylum. <u>See</u> <u>Lemus-Arita</u>, 854 F.3d at 482.[3]

---

[3]We also reject Njong's alternative contention, based on <u>Matter of Chen</u>, 20 I. & N. Dec. 16 (B.I.A. 1989), that he is entitled to asylum because his "family has suffered under atrocious forms of persecution" and he should thus not be expected to repatriate. As we have explained, <u>Matter of Chen</u> "describe[s] the standard for so-

We similarly reject Njong's contentions that we must reverse the agency's denial of his claims for withholding of removal and protection under the CAT. "Because [Njong] failed to establish eligibility for asylum, [he] necessarily cannot meet the more rigorous standard of proof for withholding of removal." Khrystotodorov v. Mukasey, 551 F.3d 775, 784 (8th Cir. 2008). And, contrary to Njong's contentions, the IJ did not err in declining to conduct a separate analysis under the CAT. A separate analysis is required only where the applicant presents evidence that he "may be tortured for reasons unrelated to his claims for asylum and withholding of removal." Guled v. Mukasey, 515 F.3d 872, 882 (8th Cir. 2008). Njong grounds his claim under the CAT on the same facts underlying his claims for asylum and withholding of removal, so no separate analysis was required.

III

Accordingly, we deny Njong's petition for review.

_____

called 'humanitarian' asylum," which is "more difficult to establish than ordinary asylum (or withholding of removal)." Malonga v. Mukasey, 546 F.3d 546, 552 (8th Cir. 2008).