# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3780

_____

Oralia Juarez-Coronado, now known as Oralia Magali Marroquin

*Petitioner*

v.

William P. Barr, Attorney General of the United States[1]

*Respondent*

------------------------------

Immigration Law Professors

*Interested party - Amicus on Behalf of Petitioner*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 16, 2018
Filed: March 29, 2019

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

---

[1]William P. Barr has been appointed to serve as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

KELLY, Circuit Judge.

Oralia Magali Marroquin, formerly known as Oralia Magali Juarez-Coronado, petitions for review of a decision of the Board of Immigration Appeals (BIA) denying her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Because we conclude that the BIA's decision was supported by substantial evidence, we deny the petition for review.

I

Marroquin is a citizen of Guatemala and is a member of the Mam ethnic group. She entered the United States with her minor daughter on September 25, 2014. After Marroquin was placed in removal proceedings, she sought asylum, withholding of removal, and CAT relief. She claimed that if she were returned to Guatemala she would be persecuted on account of her race, nationality, and membership in the proposed particular social group of Guatemalan women who are unable to leave a domestic relationship.

At a hearing before an immigration judge (IJ), Marroquin testified that she had suffered domestic violence at the hands of her daughter's father, Melvin, and feared that if she were returned to Guatemala, Melvin would hurt her and take away her daughter. Melvin lived with Marroquin in her family home between 2009 and 2014. During this time, Melvin beat Marroquin approximately 14 times, including when she was pregnant with their child. Over the course of their relationship, Melvin strangled her twice, once to the point where she could not breathe, and raped her four times.

Marroquin told Melvin to leave in May 2014, but he returned to the house many times, asking her to forgive him and get back together with him. On one occasion in July 2014, Melvin threw her on the ground and attempted to take her

-2-

clothes off, but he ran away after Marroquin's father and sister-in-law came home. On July 28, after this incident, she filed a police report. A judge issued a restraining order and told Marroquin that it was valid for six months. After the judge issued the restraining order, Melvin continued to come over to the house. If he found Marroquin alone, he would beat and threaten her. He told Marroquin that if she sought help from the police and he was sent to jail, upon his release he would come looking for her and try to kill her. She called the police once, but although they came to look for Melvin they could not find him. She did not call the police again or go back to the judge that issued the restraining order. Marroquin and her daughter left for the United States in September 2014.

The IJ denied Marroquin's requested relief, finding that Marroquin's testimony was not credible and, in the alternative, that she could not establish eligibility for asylum or withholding of removal because she could not show that the Guatemalan government was and would be unable or unwilling to protect her from Melvin. The IJ also concluded that Marroquin's CAT claim failed for the independent reason that she could not establish that the Guatemalan government would acquiesce to her torture if she were returned to Guatemala. Marroquin appealed to the BIA, and the BIA affirmed.

The BIA agreed that Marroquin's claims for asylum and withholding failed because she could not show that the Guatemalan government was and would be unable or unwilling to protect her against Melvin, noting that she successfully acquired a restraining order and that the one time she called the police they came to look for Melvin but could not find him. The BIA also upheld the CAT denial on the same grounds relied upon by the IJ. The BIA expressly declined to reach the issue of credibility.

II

On appeal, Marroquin argues that the IJ erred in her credibility determination and in denying all relief on the merits. "[B]ecause the BIA did not consider the IJ's credibility findings, that issue is not properly before us." Njong v. Whitaker, 911 F.3d 919, 922 (8th Cir. 2018). And we will not review any claim for relief based on Marroquin's purported fear of persecution on account of her Mam ethnicity, because it was not raised before or considered by the BIA. See Martinez Carcamo v. Holder, 713 F.3d 916, 925 (8th Cir. 2013). Accordingly, we review only the determination that Marroquin failed to establish past persecution or a well-founded fear of future persecution on account of her membership in a proposed particular social group of Guatemalan women who cannot leave a relationship and the denial of CAT relief.

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Davila-Mejia v. Mukasey, 531 F.3d 624, 627 (8th Cir. 2008). "When reviewing the BIA's factual determinations, we employ the deferential 'substantial evidence' standard." Njong, 911 F.3d at 922 (quoting Eusebio v. Ashcroft, 361 F.3d 1088, 1091 (8th Cir. 2004)). Under that standard, "we must affirm the BIA's factual decisions unless, after having reviewed the record as a whole, we determine that it would not be possible for a reasonable fact-finder to adopt the BIA's position." Eusebio, 361 F.3d at 1091.

We find no basis for granting Marroquin's petition for review. To establish eligibility for asylum, Marroquin must show that she meets the definition of "refugee," defined as a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The persecution "must be inflicted by a country's

-4-

government or by people or groups that the government is unable or unwilling to control." Edionseri v. Sessions, 860 F.3d 1101, 1104 (8th Cir. 2017). "Because the government's ability to control the persecutors is a question of fact, we must uphold the agency's finding 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Romero-Larin v. Sessions, 733 F. App'x 847, 850 (8th Cir. 2018) (per curiam) (citation omitted) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Here, we cannot conclude that any reasonable adjudicator would be compelled to find that the Guatemalan government was and would be unwilling or unable to protect Marroquin against Melvin. Marroquin successfully obtained a restraining order against Melvin, and it appears that the only time she attempted to enforce it, the police responded to her complaint and came to look for him. Indeed, Marroquin concedes that "it is not that the government of Guatemala is unwilling to intervene, but they have been and are unable to control Melvin." But the fact that the police could not find Melvin when she sought to enforce the protective order does not compel the conclusion that the Guatemalan authorities were unable to protect her, especially in light of the fact that she never sought their aid again. See Gutierrez-Vidal v. Holder, 709 F.3d 728, 733 (8th Cir. 2013) (substantial evidence did not indicate government was unable or unwilling to control private actors where police investigated incidents and made arrests, even though petitioner contended investigations were "minimal and fruitless"). Accordingly, we cannot overturn the agency's determination that Marroquin could not establish eligibility for asylum.[2]

---

[2]*Amici curiae* argue that there is a tension in our case law between a line of cases that states that a petitioner must show that the government "condoned" the persecutor's actions or was "completely helpless" to protect the petitioner and another line of cases that simply examines whether a petitioner can show that the government is unable to provide effective protection. To the extent that there is such a tension, we need not resolve it here, as Marroquin has conceded that the government was willing to protect her and substantial evidence supports the conclusion that the Guatemalan government was not unable to provide protection.

And because Marroquin cannot satisfy the lower burden of proof required to establish eligibility for asylum, it follows that she cannot establish eligibility for withholding of removal. Id.

Substantial evidence also supports the agency's denial of CAT relief. To establish eligibility for CAT relief, Marroquin must show that it is more likely than not that she will be subjected to torture if returned to Guatemala. See 8 C.F.R. § 208.16(c)(2); Guled v. Mukasey, 515 F.3d 872, 881 (8th Cir. 2008). "Torture" within the meaning of CAT must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007) (cleaned up). There is no evidence in the record that if Marroquin were returned to Guatemala then the Guatemalan government would torture her or be willfully blind to her torture at the hands of Melvin. Thus, we cannot overturn the agency's determination that Marroquin did not establish eligibility for CAT relief.

The petition for review is denied.

_____