# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2887

_____

Wendi Amarilis Silvestre-Giron

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 14, 2019
Filed: February 12, 2020

_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Wendi Amarilis Silvestre-Giron petitions the court for review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). The BIA dismissed Silvestre-Giron's appeal from an immigration judge's ("IJ") order denying her request for withholding of removal under section 241(b)(3)(A) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1231(b)(3)(A), and protection under the

Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c)(2). For the reasons stated below, we deny the petition for review.

## I. Background

Silvestre-Giron is a native and citizen of Guatemala, and she was removed from the United States in January 2003 for unlawful entry. Silvestre-Giron unlawfully reentered the United States in October 2003 and remained until the Department of Homeland Security ("DHS") ordered her removal in January 2018 under section 241(a)(5) of the Act, 8 U.S.C. § 1231(a)(5). Before her removal, an asylum officer determined Silvestre-Giron had raised a reasonable fear of persecution or torture in Guatemala, and the matter was referred to the IJ.

According to the evidence presented to the IJ, Silvestre-Giron feared extortion and death if she returned to Guatemala. Silvestre-Giron testified that her mother and stepfather operated a vending post at their local market, and in 2014, an unknown group began threatening them with physical harm unless they paid the group money to operate their vending post. Silvestre-Giron's mother and stepfather initially paid the extortionists. However, they were eventually unable to pay, and in August 2017, Silvestre-Giron's stepfather was shot and killed. The extortionists then told Silvestre-Giron's mother that they would kill her and her children unless payments resumed. Although law enforcement investigated the murder, it is unclear whether the person or group responsible was identified.

At some point following her stepfather's murder, Silvestre-Giron's mother moved from Guatemala City to Jalapa to live with her sister, ostensibly to escape the extortionists. But the extortionists located her in Jalapa within a few weeks and threatened her and her son — Silvestre-Giron's brother. The extortionists also separately threatened Silvestre-Giron's brother on multiple occasions, forcing him to quit school. After the extortionists found Silvestre-Giron's mother in Jalapa, she

moved back to Guatemala City. Silvestre-Giron's mother relayed all of this information to her, and Silvestre-Giron testified that she will have to live with her mother — whom the extortionists continue to threaten — if she is removed to Guatemala.

The IJ credited Silvestre-Giron's testimony but denied her request for withholding of removal and CAT protection. As to withholding of removal, the IJ concluded that any threat to her life or freedom was not because of her membership in a particular social group, i.e., her family. As to CAT protection, the IJ determined there was no evidence to suggest the Guatemalan government "play[ed] any role in consenting or acquiescing" to the treatment of Silvestre-Giron's family.

Silvestre-Giron appealed the IJ's decision to the BIA, and the BIA dismissed her appeal. The BIA found no clear error in the IJ's finding that Silvestre-Giron's life or freedom was not threatened because of her membership in a particular social group. It also found no clear error in the IJ's finding that Silvestre-Giron was not likely to "suffer torture by or with the consent or acquiescence . . . of a public official in Guatemala."

## II. Analysis

Silvestre-Giron petitions for review of the BIA's order. As to her request for withholding of removal, the BIA determined it is not clearly probable her life or freedom will be threatened in Guatemala because of her family membership. As to her request for CAT protection, the BIA determined that she failed to show a public official will inflict, instigate, consent to, or acquiesce in, torture.[1]

---

[1] Although Silvestre-Giron raises a number of objections to the BIA's order under *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the IJ's and the BIA's conclusions are sufficiently clear and the paths they took to reach those conclusions can be

"We review denial of an application for withholding of removal or CAT protection under 'the deferential substantial evidence standard.'" *Mendez-Gomez v. Barr*, 928 F.3d 728, 733 (8th Cir. 2019) (quoting *Osonowo v. Mukasey*, 521 F.3d 922, 927 (8th Cir. 2008)). "Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." *Id.* (quoting *Fofanah v. Gonzales*, 447 F.3d 1037, 1040 (8th Cir. 2006)). To grant relief, the record evidence must be "so compelling that no reasonable factfinder could fail to find in favor of the petitioner." *Id.* (quoting *Bernal–Rendon v. Gonzales*, 419 F.3d 877, 880 (8th Cir. 2005)).

## A.  Withholding of Removal

An applicant for withholding of removal "must show a 'clear probability,' that [her] 'life or freedom would be threatened in [the potential country of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" *Mendez-Gomez*, 928 F.3d at 733 (second alteration in original) (quoting *INS v. Stevic*, 467 U.S. 407, 430 (1984); 8 U.S.C. § 1231(b)(3)(A)).

The IJ and the BIA concluded Silvestre-Giron failed to establish the requisite nexus — that her life or freedom would be threatened in Guatemala *because of* her membership in a particular social group. To establish nexus, an applicant for withholding of removal "bears the burden of showing that [her] membership in a particular social group was or will be a central reason for [her] persecution." *Cambara–Cambara v. Lynch*, 837 F.3d 822, 826 (8th Cir. 2016) (quoting *In re*

---

reasonably discerned. *See Chanmouny v. Ashcroft*, 376 F.3d 810, 812 (8th Cir. 2004) ("Even where an administrative decision embodies 'less than ideal clarity,' we may uphold the decision 'if the agency's path may reasonably be discerned.'") (quoting *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974)).

*W–G–R–*, 26 I & N Dec. 208, 224 (BIA 2012) (citing 8 U.S.C. § 1158(b)(1)(B)(i))).[2] "Under the 'one central reason' nexus standard, a protected ground need not be the sole reason for persecution, but the protected ground cannot be 'incidental or tangential to the persecutor's motivation.'" *Garcia–Moctezuma v. Sessions*, 879 F.3d 863, 868 (8th Cir. 2018) (quoting *In re J–B–N– & S–M–*, 24 I & N Dec. 208, 213 (BIA 2007)).

Assuming Silvestre-Giron's family constitutes a particular social group, we conclude substantial evidence supports the finding that Silvestre-Giron's family membership is not a central reason for the persecution she fears in Guatemala. *See Aguinada–Lopez v. Lynch*, 825 F.3d 407, 409 (8th Cir. 2016) (assuming petitioner's family-based groups were cognizable); *Bernal–Rendon*, 419 F.3d at 881 (recognizing that "a nuclear family can constitute a social group"). Silvestre-Giron testified that the unknown extortionists targeted her stepfather because they wanted money and he had a source from which they could extort money — a vending post at the local market. And the extortionists murdered Silvestre-Giron's stepfather only because he could no longer pay their demands. There is no evidence the extortionists targeted or murdered Silvestre-Giron's stepfather because of his family membership or any other family connection. According to Silvestre-Giron's testimony, their only motivation was money.

---

[2]The BIA applied this one-central-reason nexus standard. In a prior case, we recognized this nexus standard is not based on the language of § 1231(b)(3) but is borrowed from the language of 8 U.S.C. § 1158(b)(1)(B)(I), which applies to applications for asylum. *Garcia–Moctezuma v. Sessions*, 879 F.3d 863, 867 (8th Cir. 2018). We declined to address the propriety of applying the one-central-reason nexus standard to § 1231(b)(3)(A) applications for withholding of removal because Garcia-Moctezuma waived the issue by using that standard during the administrative proceedings and challenging it for the first time on appeal. *Id.* at 867–68 & n.3. It would be even more inappropriate for us to reach the issue in this case because Silvestre-Giron did not raise it before the BIA and she does not raise it before us now. *See id.* (applying the one-central-reason nexus standard because Garcia-Moctezuma waived any challenge to that standard).

Although the extortionists then threatened to murder Silvestre-Giron's mother and siblings unless payment resumed, this does not compel the conclusion that Silvestre-Giron's family membership is a central reason for the persecution she fears. *See Cambara–Cambara*, 837 F.3d at 826 (finding substantial evidence supported the conclusion that family membership was not a central reason for a criminal gang's extortion of certain family members as opposed to their status as "prosperous businessmen"). When asked why the extortionists threatened her mother and her mother's children, Silvestre-Giron testified "[b]ecause they want more money." She further explained that the extortionists "are upset because we couldn't continue paying, . . . we just couldn't." On this record, a reasonable factfinder could conclude Silvestre-Giron's family membership is not a central reason for the threat posed by the extortionists but is only "incidental or tangential to the [extortionists'] motivation" — money. *Garcia–Moctezuma*, 879 F.3d at 868 (quoting *J–B–N– & S–M–*, 24 I & N at 213); *see Mendez-Gomez*, 928 F.3d at 733 ("We may only grant relief if the evidence in the record is 'so compelling that no reasonable factfinder could fail to find in favor of the petitioner.'") (quoting *Bernal–Rendon*, 419 F.3d at 880).

Silvestre-Giron argues it is improper to focus on the general threat of extortion rather than the more specific threat of murder posed by the extortionists. But the specific threat of murder must be understood in the context of all the evidence, not in isolation as Silvestre-Giron contends. *Juarez-Coronado v. Barr*, 919 F.3d 1085, 1088 (8th Cir. 2019) (stating that under the substantial-evidence standard, we review "the record *as a whole*") (quoting *Eusebio v. Ashcroft*, 361 F.3d 1088, 1091 (8th Cir. 2004) (emphasis added)). When properly understood, the BIA's conclusion that Silvestre-Giron failed to establish the requisite nexus is supported by substantial evidence.[3]

---

[3]We do not hold that a threat to harm the members of a family as a means to affect extortion can never support a meritorious application for withholding of

-6-

## B. CAT Protection

"An applicant is eligible for CAT relief if [s]he proves that 'it is more likely than not that [s]he . . . would be tortured if removed to the proposed country of removal.'" *Cambara–Cambara*, 837 F.3d at 826 (quoting 8 C.F.R. § 1208.16(c)(2)). "'Torture' within the meaning of CAT must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Juarez-Coronado*, 919 F.3d at 1089 (quoting 8 C.F.R. § 1208.18(a)(1)). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see also Juarez-Coronado*, 919 F.3d at 1089 ("A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties.") (quoting *Mouawad v. Gonzales*, 485 F.3d 405, 413 (8th Cir. 2007)).

Substantial evidence supports the BIA's conclusion that it is not likely Silvestre-Giron "will suffer torture by or with the consent or acquiescence (including the concept of willful blindness) of a public official in Guatemala." Silvestre-Giron's mother reported her husband's murder to the police, and the district attorney's office opened an investigation. Although the Guatemalan government has been unable to

---

removal under 8 U.S.C. § 1231(b)(3)(A). But whether Silvestre-Giron's family membership was a central reason for the threat to her life is a factual determination that we may not review de novo. *Fuentes–Erazo v. Sessions*, 848 F.3d 847, 852 (8th Cir. 2017) (explaining the evidence presented must "not only support[ ] a contrary conclusion but *compel*[ ] it") (emphasis in original) (quoting *Ngugi v. Lynch*, 826 F.3d 1132, 1136 (8th Cir. 2016)). Our jurisdiction only allows us to review the agency's determination for substantial evidence on the record as a whole, and we conclude there is substantial evidence in the record to support the finding that Silvestre-Giron failed to establish the requisite nexus.

identify the extortionists, the record contains no evidence any public official participated in, consented to, or had prior knowledge of the extortion or murder of Silvestre-Giron's stepfather. Nor is there any evidence a public official will inflict, instigate, consent to, or acquiesce in any torture or other harm to Silvestre-Giron if she returns to Guatemala. And the Guatemalan government's inability to identify and hold responsible the extortionists is, on its own, insufficient to establish her CAT burden. *See, e.g.*, *Garcia–Milian v. Lynch*, 825 F.3d 943, 946 (8th Cir. 2016) ("As we have previously stated, while it may be that the Guatemalan government is less than successful at preventing the torture of its citizens by gang members, this conclusion alone does not mean that the government is willfully blind toward it.") (cleaned up).

For these reasons, we deny the petition for review.

_____