# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2971
_____

Maria Estela Garcia Alvarenga; M.S.V.G.; G.V.V.G.; J.D.V.G.; J.M.C.G.

*Petitioner*s

v.

Pamela Bondi, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: May 12, 2025
Filed: August 13, 2025
[Unpublished]
_____

Before BENTON, KELLY, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Honduran citizen Maria Estela Garcia Alvarenga petitions for review of a final order of removal from the Board of Immigration Appeals (BIA) denying her application[1] for asylum, withholding of removal, and protection under the

_____

[1]Garcia Alvarenga included her children on the application as derivative beneficiaries, but derivative relief is available only on her asylum claim. See 8

Convention Against Torture (CAT). Seeing no grounds to disturb the BIA's order, we deny the petition.

## I.

Garcia Alvarenga and her children entered the United States in August 2017. In removal proceedings, Garcia Alvarenga conceded her removability but applied for asylum, see 8 U.S.C. § 1158, withholding of removal, see 8 U.S.C. § 1231(b)(3), and relief under the CAT, see 8 C.F.R. § 1208.16–.18. At the removal hearing, Garcia Alvarenga testified that she had been living with her four children in Honduras, when a local man became romantically interested in one of her daughters. The man was a member of MS-13, and Garcia Alvarenga made it clear to him that she would not let him date her daughter. He eventually threatened to kill Garcia Alvarenga and her other children if she did not permit him to date her daughter. In response, Garcia Alvarenga and her children moved in with her sister in another town in Honduras, before leaving for the United States.

The immigration judge (IJ) found Garcia Alvarenga's testimony credible but denied all relief. The BIA affirmed.

## II.

"This court reviews the BIA's decision as the final agency action . . . ." R.K.N. v. Holder, 701 F.3d 535, 537 (8th Cir. 2012). "We review the agency determination that a[ noncitizen] is not eligible for asylum, withholding of removal, or relief under the Convention Against Torture using the deferential substantial evidence standard." Juarez Chilel v. Holder, 779 F.3d 850, 853 (8th Cir. 2015) (quoting Osonowo v. Mukasey, 521 F.3d 922, 927 (8th Cir. 2008)). Pursuant to this "standard of review, we are not at liberty to reweigh the evidence, and we will uphold the denial of relief

---

U.S.C. § 1158(b)(3)(A); Fuentes v. Barr, 969 F.3d 865, 868 n.1 (8th Cir. 2020) (explaining that neither withholding of removal nor the CAT "provide derivative benefits").

unless the [noncitizen] demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Id. (quoting same). "Legal determinations are reviewed de novo." Becerril-Sanchez v. Bondi, 127 F.4th 1099, 1109 (8th Cir. 2025).

We begin with Garcia Alvarenga's application for asylum. "To establish eligibility for asylum, [Garcia Alvarenga] must show that she meets the definition of 'refugee.'" Juarez-Coronado v. Barr, 919 F.3d 1085, 1088 (8th Cir. 2019). A "refugee" is someone "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. (alteration in original) (quoting 8 U.S.C. § 1101(a)(42)).

Garcia Alvarenga sought asylum based on past persecution and a well-founded fear of future persecution due to her membership in five social groups: "(1) Honduran women and girls; (2) Honduran women and girls viewed as property by armed criminal organizations; (3) nuclear family members of [her daughter]; (4) Honduran mothers; and (5) Honduran women who refuse to conform to societal norms or Honduran women who favor women's rights and equality."

The BIA determined that the first, second, and fifth groups were not cognizable, and the government argues the same on appeal. "A social group requires sufficient particularity and visibility such that the group is perceived as a cohesive group by society." Juarez Chilel, 779 F.3d at 854 (quoting Garcia v. Holder, 746 F.3d 869, 872 (8th Cir. 2014)). "Membership in a particular social group refers to persons who hold an immutable characteristic, or common trait such as sex, color, kinship, or . . . shared past experiences." Id. (quoting same). "The group must also be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." Fuentes v. Barr, 969 F.3d 865, 871 (8th Cir. 2020) (quotation omitted).

The BIA concluded that the first group of "Honduran women and girls" was an overbroad social group, and we see no error. Compare Safaie v. I.N.S., 25 F.3d 636, 640 (8th Cir. 1994) (rejecting the particular social group of "Iranian women" as "overbroad, because no factfinder could reasonably conclude that all Iranian women had a well-founded fear of persecution based solely on their gender" superseded by statute on other grounds, as recognized in Rife v. Ashcroft, 374 F.3d 606, 614–15 (8th Cir. 2004)), with Hassan v. Gonzales, 484 F.3d 513, 518 (8th Cir. 2007) (approving a country-wide gender-based group because "a factfinder could reasonably conclude that all Somali females have a well-founded fear of persecution based solely on gender *given the prevalence of [female genital mutilation]*" (emphasis added)).

We likewise conclude that the BIA did not err in finding the second group, "Honduran women and girls viewed as property by armed criminal organizations," insufficiently particular and not supported with record evidence showing the group is socially distinct. See Juarez Chilel, 779 F.3d at 854 (holding proposed group "individuals who are victims of gang violence" not cognizable because it "lacks the visibility and particularity required to constitute a social group" (quotation omitted)); Fuentes, 969 F.3d at 872 (holding proposed group "vulnerable Salvadoran females" insufficiently particular because there was no "clear benchmark for determining who falls within the group" and the "group is defined based on its members being at risk of persecution" (quoting Rivas v. Sessions, 899 F.3d 537, 541 (8th Cir. 2018))). And regarding the fifth group, we see no error in the BIA's conclusion that insufficient evidence supported "Honduran women who refuse to conform to societal norms or Honduran women who favor women's rights and equality" as a distinct social group. See Rivas, 899 F.3d at 541 (determining social group of "targeted gang girlfriends" insufficiently particular because "[m]embership in the group . . . depends entirely on whom the persecutor targets," and non-citizen failed to demonstrate society perceives the group as socially distinct).

-4-

As to the third and fourth, family-based groups[2]—nuclear family members of Garcia Alvarenga's daughter and Honduran mothers—the BIA concluded that Garcia Alvarenga did not show sufficient evidence of a nexus between her membership in the groups and the claimed persecution. See Ferchichi v. Bondi, 128 F.4th 966, 974 (8th Cir. 2025) (explaining that "petitioners must show that a protected ground 'was or will be at least one central reason for persecuting the applicant'" (quoting 8 U.S.C. § 1158(b)(1)(B)(i))); Fuentes, 969 F.3d at 871 (noting that, though "members of an immediate family may constitute a particular social group," the applicant must still prove "a nexus between the persecution suffered and the applicant's membership in that social group" (quoting Rivas, 899 F.3d at 542)). Here, the man did not begin threatening Garcia Alvarenga until after she refused to let him date her daughter, and Garcia Alvarenga and other members of her family had previously lived in Honduras, without threats from this man, for several years. See Fuentes, 969 F.3d at 871 ("The fact that 'other family members have not suffered persecution . . . supports the Board's conclusion that [the applicant] was [not] persecuted on account of her membership in the family.'" (second and third alterations in original) (quoting Rivas, 899 F.3d at 542)). Thus, the BIA concluded that the IJ did not clearly err by finding that the local man targeted Garcia Alvarenga because of a personal dispute—that she refused to let him date her daughter. See Rivas, 899 F.3d at 542 ("[T]he fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim." (quotation omitted)). We see no error in this determination. See id. ("The record [must] compel a conclusion that family relationship—*independent* of . . . other factors—was a central reason for persecution." (emphasis added)).

Because the BIA did not err in denying Garcia Alvarenga's claim for asylum, it necessarily follows that the BIA did not err in finding that she did not meet the standard for withholding of removal. See Becerril-Sanchez, 127 F.4th at 1110 (explaining that a noncitizen "who cannot meet the standard for asylum cannot meet

---

[2]The government does not contest that these two particular social groups are cognizable.

-5-

the standard for establishing withholding of removal" (quoting Guled v. Mukasey, 515 F.3d 872, 881 (8th Cir. 2008))); see also Juarez-Coronado, 919 F.3d at 1089 (same).

Nor did the BIA err in upholding the IJ's denial of CAT relief. Garcia Alvarenga does not challenge the BIA's determination that she could safely relocate within Honduras, which is an independent bar to CAT relief. See Bautista-Bautista v. Garland, 3 F.4th 1048, 1054 (8th Cir. 2021) (noting that if someone can relocate to avoid torture, that renders them "ineligible for relief under the [CAT]").

III.

We deny Garcia Alvarenga's petition for review.

_____