# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1347
_____

Luis Amadeo Prieto-Pineda

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 12, 2020
Filed: May 28, 2020

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Luis Amadeo Prieto-Pineda ("Prieto-Pineda") is a citizen of El Salvador who, after conceding removability, sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") found the asylum application was time-barred and denied withholding and CAT relief on the merits. The Board of Immigration Appeals ("the Board") dismissed the appeal. We have jurisdiction under 8 U.S.C. § 1252 and affirm.

## I. Background

Prieto-Pineda, a citizen and native of El Salvador, was the president of a local fishing cooperative in Canton El Escobal. As president of the cooperative, Prieto-Pineda controlled the cooperative's boats. Members of Mara 18, a prominent criminal gang in Canton El Escobal, approached Prieto-Pineda seeking rides on the fishing cooperative boats to nearby islands and ports so the gang could avoid crossing the territory of its rival, MS-13.

Prieto-Pineda agreed to provide rides to Mara 18 gang members in exchange for payment. During the trips, Prieto-Pineda overheard the gang members discussing the murder of people who had refused to help them. The gang members tried to recruit Prieto-Pineda but he demurred. When the Mara 18 gang members reduced the payment to Prieto-Pineda to gas reimbursement only, Prieto-Pineda declined to provide further access to the boats. Unhappy with Prieto-Pineda's actions, Mara 18 gang members repeatedly came to his home late at night to threaten him. They stole animals from Prieto-Pineda's farm, threw dead animals and rocks on his roof, and generally frightened his family. When these incidents occurred, Prieto-Pineda called the police and officers regularly arrived and frightened away the intruders with their sirens. Prieto-Pineda's fears extended to MS-13 gang members because he was afraid they knew that he had been providing rides to Mara 18 members.

Concerned for his safety, Prieto-Pineda left El Salvador and entered the United States through Texas in 2013 without being admitted or paroled. In September 2013, Prieto-Pineda was charged with removability and placed on bond pending his removal hearing. Without notifying the Department of Homeland Security, Prieto-Pineda left Texas for Minnesota and failed to appear at his removal hearing.

From 2014 to 2017, Prieto-Pineda resided in Minnesota and maintained regular contact with his wife in El Salvador until her death in 2016. During these

-2-

conversations, she reported receiving threats from Mara 18 members. The gang members, apparently upset because Prieto-Pineda redistributed the cooperative's boats among its members, stole the boat Prieto-Pineda had left for his family. In 2014, Prieto-Pineda's wife described being pregnant as a result of a rape, giving birth to a child the following year.

In 2016, Prieto-Pineda learned that his wife had been murdered. He does not know if Mara 18 gang members were involved in the murder. El Salvadoran police conducted an investigation and eventually arrested three men. While not conclusively established, it appears the murder was in retribution for Prieto-Pineda's wife cooking for soldiers and police officers.

In 2017, removal proceedings took place in Fort Snelling, Minnesota, during which Prieto-Pineda conceded removability and sought asylum, withholding of removal, and relief under CAT. The IJ found that Prieto-Pineda had failed to show extraordinary or changed circumstances since his entry into the United States and that his asylum application was barred by the one-year time limit. The IJ denied withholding, determining Prieto-Pineda had failed to establish he faced likely persecution in El Salvador. The IJ denied CAT relief because Prieto-Pineda did not present a reason separate from those in his asylum and withholding claims.

Prieto-Pineda unsuccessfully appealed to the Board of Immigration Appeals. The Board denied Prieto-Pineda's asylum and withholding claims on the merits and concluded that the IJ's determination that the El Salvadoran government was not "unwilling or unable" to control Mara 18 gang members was relevant evidence tending to show that the government did not "acquiesce" to torture, a prerequisite for CAT relief. Prieto-Pineda appeals, claiming the decision is unsupported by substantial evidence. He further claims the Board erred when it: (1) declined to review the IJ's finding that his asylum application was time-barred; (2) used findings from the IJ's withholding analysis to deny asylum; and (3) denied CAT relief.

-3-

## II. Discussion

We will uphold the denial of asylum and withholding of removal if the decision is supported by substantial evidence in the record. Mejia-Ramos v. Barr, 934 F.3d 789, 792 (8th Cir. 2019). Under this deferential standard, administrative findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Rivas v. Sessions, 899 F.3d 537, 541 (8th Cir. 2018). We review the Board's legal determinations *de novo*. N'Diaye v. Barr, 931 F.3d 656, 661 (8th Cir. 2019).

### A. Substantial Evidence–Asylum and Withholding of Removal

Prieto-Pineda was denied asylum and withholding on the grounds that he failed to establish he faces harm in El Salvador because of membership in a protected social group or political opinion and he failed to demonstrate the El Salvadoran police are unwilling or unable to control the gang violence he fears. Asylum may be granted, in relevant part, upon a showing of a "well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion," in the alien's country of origin. 8 U.S.C. § 1101(a)(42)(A). We have explained that in order to meet the requirements for persecution, the harm must be "inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control." Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005) (cleaned up).

An alien is entitled to withholding of removal to a particular country if, in relevant part, the agency finds the alien's life or freedom is threatened due to membership in a particular social group or a political opinion. 8 U.S.C. § 1231(b)(3)(A). Persecution for withholding eligibility requires a showing that the government is unwilling or unable to protect the petitioner from non-governmental harm. Rendon v. Barr, 952 F.3d 963, 970–71 (8th Cir. 2020).

Substantial evidence in this record supports the IJ's findings that: (1) Prieto-Pineda does not face persecution based on membership in a particular social group or a political opinion in El Salvador; and (2) the El Salvadoran government is not unwilling or unable to protect him. Prieto-Pineda alleges that he faces persecution based on his membership in two particular social groups, the fishing cooperative and his immediate family. He also claims he will suffer persecution based on his opposition to joining the Mara 18 gang, which he characterizes as a political opinion.

A particular social group is (1) comprised of members sharing a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society at issue. Rivas, 899 F.3d at 541. We assume, without deciding, that a fishing cooperative could be recognized as a particular social group. Prieto-Pineda's asylum and withholding claims fail, however, because although the record supports a finding that Mara 18 gang members targeted Prieto-Pineda for his access to the cooperative's boats, it does not support a finding of persecution based on his membership in the fishing cooperative. Prieto-Pineda has not shown a well-founded fear of persecution based on membership in a particular social group, or that his life or freedom would be threatened in El Salvador due to membership in a particular social group.

Even though family membership may constitute a particular social group, substantial evidence in this record shows that Prieto-Pineda was not and will not be targeted due to his family membership. Instead harassment of his family was merely a means to coerce him into providing rides to the gang. See Rivas, 899 F.3d at 542 (acknowledging that family membership may constitute a particular social group, but that targeting family members as means to another end is insufficient to establish a claim).

Nor does the tragic death of Prieto-Pineda's wife demonstrate that he faces persecution by Mara 18 gang members when he returns to El Salvador. Substantial

evidence supports a finding that her death was unrelated to the threats he received in El Salvador and was not perpetrated by Mara 18 gang members. Prieto-Pineda conceded he did not know if the gang was involved in his wife's murder. The record contains news clippings describing the circumstances of her death as unrelated to Prieto-Pineda or his past dealings with the Mara 18 gang.

The IJ's finding that Prieto-Pineda has not been targeted by Mara 18 gang members as a political enemy is also supported by substantial evidence. Although the Mara 18 gang may have some political motivations, the record here supports a finding that Prieto-Pineda was harassed for refusing to provide rides, not for any political opposition to the gang. See Marroquin-Ochoma v. Holder, 574 F.3d 574, 578 (8th Cir. 2009) (upholding determination that petitioner who received threats after refusing to join gang, without more, was not persecuted on account of an anti-gang political opinion).

The Board also upheld the IJ's finding that the El Salvadoran government was not unable or unwilling to protect Prieto-Pineda from Mara 18 gang members. When gang members came to Prieto-Pineda's house to threaten him, the police responded to his calls and scared them away. When Prieto-Pineda's wife was murdered, the El Salvadoran police investigated and arrested the three men they believed were responsible for the killing. Even though Prieto-Pineda presents evidence that the police have difficulty controlling gangs in El Salvador generally, the record does not demonstrate the government is unwilling or unable to protect him. See Menjivar, 416 F.3d at 921 (accepting as reasonable the Board's view that a petitioner must show more than government difficulty controlling private behavior to meet the "unwilling or unable" standard).

We conclude the IJ's and Board's determination that Prieto-Pineda was not entitled to asylum or withholding of removal is supported by substantial evidence in the record.

-6-

*B. Persecution Findings–Asylum*

Prieto-Pineda asserts the Board erred in reaching a decision on the merits of his asylum claim based on the IJ's determination that Prieto-Pineda did not face persecution entitling him to withholding of removal. Withholding requires aliens to demonstrate they will "more likely than not" face persecution upon removal. INS v. Stevic, 467 U.S. 407, 429–30 (1984). This likelihood-of-persecution standard is narrower than that for asylum, which requires showing a "well-founded fear." See 8 U.S.C. § 1101(a)(42)(A).

The Supreme Court has made clear that the "more likely than not" standard for withholding is inapplicable to asylum applications. See INS v. Cardoza-Fonseca, 480 U.S. 421, 423–24 (1987). The Board's decision in this case used factual findings from the IJ's withholding analysis to deny asylum. Prieto-Pineda, however, is ineligible for either withholding or asylum because the harm he faces is not due to a protected ground and he has not shown the government is unwilling or unable to protect him. Because Prieto-Pineda has not established that the harm he fears qualifies as persecution, the Board did not err in finding that he is ineligible for asylum.

*C. One-Year Bar–Asylum*

Prieto-Pineda also argues the Board erred by failing to review the IJ's finding that his asylum application was untimely. An alien must submit an application for asylum within one year of entry into the United States. 8 U.S.C. § 1158(a)(2)(B). While an alien can submit an asylum application for consideration after one year, to do so he must demonstrate changed or extraordinary circumstances impacting his eligibility for asylum or the reason for his delayed submission. Id. at § 1158(a)(2)(D). The Board was not required to decide issues unnecessary to the final resolution of Prieto-Pineda's appeal. See INS v. Bagamasbad, 429 U.S. 24, 25–26 (1976) (per

curiam) (applying general rule that courts and agencies need not reach unnecessary issues). Because the Board disposed of Prieto-Pineda's asylum claim on the merits, it was not required to analyze his claim that he established changed or extraordinary circumstances bypassing the one-year bar.

### D. CAT Relief

When a petitioner's asylum and withholding claims are denied, a "separate [CAT] analysis is required only where the applicant presents evidence that he may be tortured for reasons unrelated to his claims for asylum and withholding of removal." Njong v. Whitaker, 911 F.3d 919, 924 (8th Cir. 2018) (quotation marks omitted). CAT relief requires a finding that the alleged torture occurs with "the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The Board is precluded from engaging in fact-finding when deciding appeals, except for taking administrative notice of commonly-known facts. 8 C.F.R. § 1003.1(d)(3)(iv).

Even if the Board engaged in prohibited fact-finding in determining that Prieto-Pineda failed to establish government acquiescence, the error was harmless. The Board upheld the IJ's finding that Prieto-Pineda failed to present any reasons for CAT relief separate from those comprising his asylum and withholding claims. This was a sufficient basis to deny CAT relief and any improper fact-finding was harmless error. See Puc-Ruiz v. Holder, 629 F.3d 771, 782 (8th Cir. 2010) (finding Board error that did not change outcome of appeal was harmless).

## III. Conclusion

For the foregoing reasons, we affirm.

_____