# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1678

———————————————

Teresa C. Martinez-Matute; N.A.O.M.; J.D.O.M.

*Petitioner*s

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: December 15, 2022
Filed: May 5, 2023
[Unpublished]

——————————

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

——————————

PER CURIAM.

Teresa Consuelo Martinez-Matute (Martinez) and her two sons, both of whom were minors at the time of the removal proceedings, petition for review of the final order of removal issued by the Board of Immigration Appeals (Board). They do not dispute that they are removable from the United States for entering the country without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Instead, they

challenge the Board's conclusion that they failed to meet their burden of proof to sustain their claims for asylum and withholding of removal. We deny the petition for review.

## I. *Background*

Martinez and her two sons (collectively, "petitioners") are natives and citizens of Honduras, who entered the United States without inspection on or about September 5, 2015. The Department of Homeland Security commenced removal proceedings by filing a Notice to Appear (NTA) for each petitioner, charging them with inadmissibility under § 1182(a)(6)(A)(i) as a non-citizen present in the United States without being admitted or paroled. The petitioners admitted the factual allegations in their respective NTAs and conceded the charge of inadmissibility.

Martinez submitted an application for asylum and withholding of removal, by which she also sought protection under the Convention Against Torture (CAT). Martinez named her two minor sons as derivatives on her application. Her eldest son, however, subsequently submitted an independent application after testimony was taken. The petitioners sought asylum and withholding of removal based on their membership in a proposed particular social group defined as "Immediate Family Members of People who had an affair (or allegedly had an affair) with a Cartel/Gang members [sic] girlfriend or wife." A.R. at 201; *see also id.* at 69 ("[T]he [petitioners'] asylum claim is based on their fear of being harmed or killed by Valle, who they say is the leader or 'boss' of the chirinos gang. They contend that they are members of the particular social group of 'family members whose father or husband may have had an affair with a gang leader.'").

Martinez and her eldest son testified in support of their claims. According to their testimony, Martinez's husband and her sons' father, Hector, was murdered on July 14, 2015. The petitioners claimed that the leader of the local gang, Valle, shot and killed Hector because Hector was rumored to be having an affair with Valle's

wife, Marie. Hector received a phone call from Marie, warning him that Valle was going to kill him. Martinez and her eldest son testified that Valle's son started this rumor because he was jealous of Martinez's eldest son. The son and Hector met with Valle in January 2015 to resolve the misunderstanding. At the meeting, Valle "asked [Hector] to forgive the misunderstanding. And [Valle] took out a gun and said [that he] was going to kill [Hector] with [it] because of the comments [Valle's] son had said." *Id.* at 137. After this meeting, the petitioners were not aware of Hector receiving any other threats from Valle prior to Hector's death in July 2015.

When Hector's body was found, he had all his belongings on his person, including 40,000 pesos. While there were no known witnesses to Hector's murder, the neighbors who heard the gunshots claimed that they also heard a motorcycle that sounded like the one that Valle owned. Approximately a week after Hector's murder, Martinez's eldest son received a text message threatening that Hector's family "had 48 hours to leave [Honduras]" and if the family failed to comply, they would be killed. *Id.* at 151. The message concluded with "yours truly, Valle." *Id.* Two days after the text message, Martinez's eldest son was driving Hector's car when he saw Valle on his motorcycle. Valle shot at the son, but he escaped. When asked "[w]hy would Valle want to shoot at [her eldest son]," Martinez replied, "[b]ecause [he] was . . . a witness" to Valle having threatened Hector. *Id.* at 108. Martinez was never herself threatened.

The immigration judge (IJ) denied the petitioners' claims for asylum, withholding of removal, and CAT relief. Although the IJ acknowledged that "kinship has consistently been held to be a particular social group," he concluded that the petitioners failed to show "that they were targeted for harm in the past on account of their relationship with Hector." *Id.* at 69. The IJ reasoned that the petitioners' "problems arose because of a rumor promulgated by a jealous teenager." *Id.* The IJ noted that "the issue appeared to have been resolved" when the eldest son and Hector met with Valle "and the genesis of the rumor was exposed." *Id.* The IJ further noted

that no evidence corroborated the "rumors that Hector and Marie were having a relationship." *Id.* The IJ pointed out "that Hector bought lottery tickets on a nearly daily basis from Marie" and "continued buying lottery tickets from Marie and socializing with her even after meeting with Valle," which showed that "Hector was not fearful." *Id.*

The IJ observed that "[g]ang violence plagues many Central American countries," which "undermine[d] the [petitioners'] attempt to establish a nexus to a protected ground based on [their] family membership." *Id.* at 69–70. "Without evidence proving that an applicant is specifically targeted for persecution because of the family relationship," the IJ explained, "any harm from general crime or civil strife does not constitute persecution." *Id.* at 70.

Further, the IJ found that the petitioners' "claim ar[ose] out of private violent conduct." *Id.* He concluded that the petitioners failed to show that the Honduran "government was unable or unwilling to assist them." *Id.* In support of his conclusion, the IJ cited the petitioners' "testimony that no police report was ever filed by Hector and [the Honduran] government's efforts to conduct a homicide investigation" into Hector's death. *Id.*

"Finally," the IJ explained, "the record lack[ed] sufficient evidence to establish that Valle killed Hector." *Id.* at 71. Instead, the record shows that "Hector's death was under investigation by the Homicide Division and there does not appear to be a conclusion showing the perpetrator." *Id.*

Accordingly, the IJ concluded that the petitioners "did not establish the requisite nexus between the mistreatment they described and one of the five enumerated grounds in section 101(a)(42) of the Act." *Id.*

Additionally, the IJ denied CAT relief to the petitioners, concluding that they failed to establish that "it is more likely than not that they would be tortured, if removed to Honduras, at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* The IJ noted that the petitioners were never previously physically harmed or tortured and that their "fear of future harm is from a criminal named Valle without any credible evidence to support that he is operating with the consent of the government or at the direction of any public official." *Id.*

The petitioners appealed the IJ's decision to the Board, which affirmed the IJ's decision to deny asylum and withholding of removal. The Board determined that the petitioners failed to "sufficiently establish a nexus between the persecutory conduct and any harm they suffered or fear, and their membership in the proposed particular social group." *Id.* at 4. It further determined that their "claim [was] based on a personal dispute," which "is not sufficient for establishing eligibility for asylum or withholding of removal under the Act." *Id.* And the Board concluded that the IJ did not clearly err in finding that the record lacks sufficient evidence showing that Valle, a gang member, killed Hector. Because the "lack of nexus" was "dispositive" of the petitioners' "eligibility for asylum and withholding of removal," the Board "decline[d] to address the remaining elements of [the petitioners'] claim." *Id.*

The Board also rejected the petitioners' argument that the IJ "erred in not considering their withholding of removal claim separately from their asylum claim" because they did not "articulate[] what they believe the correct standard should be, [or] . . . provide[] case law indicating that . . . the Eighth Circuit . . . does not apply the 'one central reason' standard in withholding of removal cases." *Id.* at 5.

Finally, the Board affirmed the IJ's decision denying the request for CAT protection.

## II. *Discussion*

In their petition for review of the Board's decision, the petitioners request that this court vacate the Board's decision and remand to the IJ based on the following errors: (1) the Board's refusal "to address the particular social group the IJ analyzed," (2) the Board's failure to address the petitioners' claim of a well-founded fear of future persecution, (3) the Board's "uph[o]ld[ing] a nexus finding for withholding of removal despite the lack of factfinding regarding the [p]etitioners' future persecution," and (4) the Board's application of "the wrong nexus standard for withholding of removal." Pet'rs' Br. at 7.

> We review the [Board's] decision, as it is the final agency action, but to the extent that the [Board] adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action. An agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. We review asylum and withholding of removal claims for substantial evidence[,] upholding the decision if it is supported by reasonable, substantial, and probative evidence based on the record as a whole.

*Gutierrez-Vidal v. Holder*, 709 F.3d 728, 731–32 (8th Cir. 2013) (cleaned up).

### A. *Asylum*

"An applicant is eligible for asylum if she is unable or unwilling to return to her country 'because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group . . . .'" *Rivas v. Sessions*, 899 F.3d 537, 541 (8th Cir. 2018) (quoting 8 U.S.C. § 1101(a)(42)(A)). The following criteria determine "whether an asserted group qualifies as a particular social group": "whether the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* (internal quotation marks omitted). The applicant bears the burden of establishing that "membership in a particular social group . . . was or will be at least one central

reason for persecuting the applicant." *Kanagu v. Holder*, 781 F.3d 912, 916 (8th Cir. 2015) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). In other words, "there must be a nexus between the persecution suffered and the applicant's membership in that social group." *Rivas*, 899 F.3d at 542 (citing *Martinez-Galarza v. Holder*, 782 F.3d 990, 994 (8th Cir. 2015)). "[T]he lack of nexus is a basis to deny an asylum application . . . ." *Baltti v. Sessions*, 878 F.3d 240, 245 (8th Cir. 2017) (per curiam).

We have previously held that a petitioner does "not [have] a valid basis for an asylum claim" where the past or feared harm "is motivated by purely personal retribution." *Martinez-Galarza*, 782 F.3d at 993; *see also Rivas*, 899 F.3d at 542 ("[T]he fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim." (quoting *Matter of L-E-A-*, 27 I. & N. Dec. 40, 45 (BIA 2017)))[1]; *Alavez-Narvaez v. Sessions*, 692 F. App'x 804, 805 (8th Cir. 2017) (unpublished per curiam) ("We . . . conclude that [the petitioner] did not establish a nexus between his feared harm and any protected ground, as his perceived threat was based on purely personal retribution.").

As the government correctly points out, the petitioners have not challenged in their petition for review "the agency's finding that their claim rested on private conduct." Resp't's Br. at 10. Therefore, the petitioners have waived any challenge to the Board's finding that their claim rested on a personal dispute. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are

---

[1]"A portion of *Matter of L-E-A*[-] . . . that is not relevant here was overruled by the Attorney General." *Duenas Quinto v. Garland*, No. 21-919, 2023 WL 2401265, at *1 n.1 (9th Cir. Mar. 8, 2023) (citing *Matter of L-E-A-*, 27 I. & N. Dec. 581 (A.G. 2019)). But the Attorney General "later 'vacated [that decision] in its entirety' . . . thereby reinstating the BIA's 2017 decision." *Id.* (quoting *Matter of L-E-A-*, 28 I & N. Dec. 304 (A.G. 2021)).

deemed waived. This court does not consider issues raised for the first time on appeal in a reply brief unless the appellant gives some reason for failing to raise and brief the issue in his opening brief." (cleaned up)).

Accordingly, we hold that any persecution the petitioners faced arose out of private violent conduct, which is not a valid basis for asylum. *See Martinez-Galarza*, 782 F.3d at 993.[2]

## B. *Withholding of Removal*

The petitioners next challenge the Board's denial of their withholding-of-removal claim.

> An alien's removal must be withheld "if the Attorney General decides that the alien's life or freedom would be threatened" in the country to which they will be returned "because of [one of the following protected grounds:] the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To qualify for withholding of removal, "an alien [must] demonstrate[ ] that the alien's life or freedom would be threatened for *a reason*" related to one of the protected grounds. 8 U.S.C. § 1231(b)(3)(C) (emphasis added).

---

[2]The petitioners also argue that the IJ was required to analyze whether they had a well-founded fear of future persecution after concluding that they did not suffer past persecution. But as the government correctly notes, the petitioners have not claimed "that their fear of future harm rested on a basis other than their personal dispute with Valle, which is not a protected ground." Resp't's Br. at 18. Because the petitioners failed to establish a protected ground, there was no need for the IJ to analyze whether a well-founded fear of future persecution exists. *See Salat v. Garland*, 32 F.4th 684, 689 (8th Cir. 2022) (citing *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.")).

*Garcia-Moctezuma v. Sessions*, 879 F.3d 863, 867 (8th Cir. 2018) (alterations in original).

The petitioners argue that, in denying their withholding-of-removal claim, the Board "applied the wrong nexus standard for withholding of removal." Pet'rs' Br. at 7. Specifically, they assert that while "one must show that the protected ground is 'one central reason' for the persecution" to establish their entitlement to asylum, "the applicant need only show 'that the alien's life or freedom would be threatened in that country *because of* the alien's . . . particular social group.'" Pet'rs' Br. at 18 (first quoting 8 U.S.C. § 1158(b)(1)(B)(i), then quoting 8 U.S.C. § 1231(b)(3)(A)).

We decline to address whether the statutory nexus standard for withholding-of-removal claims is less rigorous than the asylum standard because the "withholding of removal application would have failed under either nexus standard." *Garcia-Moctezuma*, 879 F.3d at 868. Again, the Board found that the petitioners' claims were based on a personal dispute that lacked *any* nexus between a protected ground and harm experienced or feared. As explained *supra*, the petitioners did not challenge this finding on appeal. As with asylum, any persecution that the petitioners faced from private violent conduct is not a valid basis for withholding of removal. *See Rivas*, 899 F.3d at 542 (holding that the petitioner's failure to show nexus was dispositive of her claims for asylum and withholding of removal); *Lopez-Mendez v. Holder*, 698 F.3d 675, 679 (8th Cir. 2012) (holding the petitioner's "inability to prove a nexus between the threats and a protected ground precludes granting him asylum or withholding of removal").

## III. *Conclusion*

Accordingly, we deny the petition for review.

_____