# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3225

_____

Jesus Ramos-Garcia

*Petitioner*

v.

Pamela Bondi,[1] Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 21, 2024
Filed: March 14, 2025
[Unpublished]

_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.

_____

PER CURIAM.

Jesus Ramos-Garcia petitions for review of a Board of Immigration Appeals
(BIA) order upholding an immigration judge's (IJ) denial of his application for
asylum and withholding of removal. We affirm.

_____

[1]Attorney General Bondi is automatically substituted for her predecessor
under Federal Rule of Appellate Procedure 43(c)(2).

## I. *Background*

Ramos-Garcia is a native and citizen of Mexico. While in Mexico, members of a criminal cartel harassed Ramos-Garcia and his cousin while they were at work to influence them to sell drugs for the cartel. This happened three to four times per week for an unspecified, prolonged period. One day in June 2012, Ramos-Garcia and his cousin were driving home from work when men believed to be "narco criminals" reached in the car and stabbed Ramos-Garcia. His cousin escaped from the car and ran away to Monterrey, Mexico, where he was later murdered. Police responded to the scene, but the assailants had escaped. Ramos-Garcia testified that there was a police report, but he was unsure if the assailants were ever caught. In his testimony, he attributed these events to their refusal to sell drugs for the cartel.

Ramos-Garcia legally entered the United States in January 2016, accompanied by his wife and three children, with permission to remain until June 2016. The family overstayed their visa. In March 2018, immigration officers detained Ramos-Garcia during a fugitive investigation. The Department of Homeland Security charged Ramos-Garcia with removability under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted. Ramos-Garcia admitted that the allegations in the Notice to Appear were true and conceded his removability. The IJ sustained the charge of removal.

In October 2019, Ramos-Garcia filed an application for asylum and withholding of removal based on membership in a particular social group and political opinion. His claimed particular social group was "persons who have suffered violence and who have a well-founded fear of future violence for which the Mexican government is unable and unwilling to control." A.R. 73 (capitalization altered). He also claimed holding an anti-crime, anti-gang political opinion.

The IJ denied Ramos-Garcia's application. First, the IJ found that Ramos-Garcia was not eligible for asylum. Asylum applications must be filed within one year of entering the United States, but Ramos-Garcia filed his application over three years after entering the United States. Ramos-Garcia argued for an exception to the

one-year bar based on his ignorance of the one-year bar, his fear, and the current crime levels in Mexico. The IJ rejected those excuses because there was no testimony or evidence to support the claims, only argument through counsel. Further, to the extent Ramos-Garcia argued that there were changed circumstances in Mexico, the IJ rejected that argument because Ramos-Garcia's basis for the application—fear of criminals—existed when he entered the country.

Second, the IJ denied his request for withholding of removal. The IJ concluded that Ramos-Garcia could not establish persecution. First, private actors, not the government, harmed him. Second, he did not show that the Mexican government was unable or unwilling to protect him from those private actors. In fact, police responded to the crime scene, took a police report, and tried to apprehend the assailants. Further, Ramos-Garcia's particular social group was not cognizable because it was "impermissibly circularly defined and [was] otherwise made up of legal conclusions." *Id.* at 75. He also showed no nexus between the social group that he identified and the harm suffered because past harm defined the social group. For his claimed political opinion, the IJ found that Ramos-Garcia could not establish a nexus between the political opinion and the harm. His harm resulted from refusing to sell drugs for the cartel, and there was no evidence that the gang attributed a political opinion to him.

Ramos-Garcia appealed the IJ's decision, and the BIA affirmed for essentially the reasons stated by the IJ—untimeliness, an incognizable social group, and lack of proof that his political opinion motivated the mistreatment. On appeal, Ramos-Garcia argues that the BIA erred on each of its conclusions.

## II. *Discussion*

"We will uphold the denial of asylum and withholding of removal if the decision is supported by substantial evidence in the record." *Prieto-Pineda v. Barr*, 960 F.3d 516, 519 (8th Cir. 2020). This is a "deferential standard," and "administrative findings of fact are conclusive unless any reasonable adjudicator

would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted). We review legal determinations de novo. *Id.*

## A. *Asylum*

An asylum applicant must apply within one year of entering the United States. 8 U.S.C. § 1158(a)(2)(B). An untimely application may be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." *Id.* § 1158(a)(2)(D). Courts do not have "jurisdiction to review any determination of the Attorney General" under § 1158(a)(2). *Id.* § 1158(a)(3).

Ramos-Garcia filed his asylum application in October 2019, over three years after he entered the United States. The IJ and BIA found that he did not establish an exception to the one-year bar because he did not demonstrate extraordinary or changed circumstances. This court does not have jurisdiction to review the agency's determination that Ramos-Garcia did not establish an exception to the one-year bar. *Pacheco-Moran v. Garland*, 70 F.4th 431, 438 (8th Cir. 2023) ("The IJ's finding that [Petitioner] did not demonstrate extraordinary or changed circumstances is an unreviewable discretionary judgment of the Attorney General."); *see also Cambara–Cambara v. Lynch*, 837 F.3d 822, 825 (8th Cir. 2016).

## B. *Withholding of Removal*

The Attorney General must withhold removal upon a determination that the applicant's "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Ramos-Garcia "must establish a clear probability that his life or freedom would be threatened" because of the protected group or opinion. *Pacheco-Moran*, 70 F.4th at 437 (internal quotation marks omitted). This "clear probability" standard for withholding of removal is stronger than the "well-founded fear" standard for asylum. *See La v. Holder*, 701 F.3d 566, 573 (8th Cir. 2012).

Further, Ramos-Garcia must demonstrate a nexus between the protected ground and the persecution, which means that he must show that the protected ground was one central reason for the harm. *See Durakovic v. Garland*, 101 F.4th 989, 996 (8th Cir. 2024). Under this standard, the "protected ground need not be the sole reason for persecution, but the protected ground cannot be incidental or tangential to the persecutor's motivation." *Garcia-Moctezuma v. Sessions*, 879 F.3d 863, 868 (8th Cir. 2018) (internal quotation marks omitted).

### 1. *Particular Social Group*

Ramos-Garcia argues membership in the particular social group of "persons who have suffered violence and who have a well-founded fear of future violence for which the Mexican government is unable and unwilling to control." Appellant's Br. at 8 (capitalization altered). The IJ and BIA both held that this group was not cognizable because it was impermissibly circular. "Whether a group is a particular social group presents a question of law, which we review de novo." *Ngugi v. Lynch*, 826 F.3d 1132, 1137–38 (8th Cir. 2016) (internal quotation marks omitted).

A particular social group is: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* at 1138 (internal quotation marks omitted). The group must be "defined by characteristics that provide a clear benchmark for determining who falls within the group" and must be "discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Fuentes v. Barr*, 969 F.3d 865, 871 (8th Cir. 2020) (per curiam) (internal quotation marks omitted). "[P]ersecutory conduct alone cannot define the group." *Id.* (quoting *Rivas v. Sessions*, 899 F.3d 537, 541 (8th Cir. 2018)).

We agree with the BIA's determination that Ramos-Garcia's proposed social group is not cognizable. The putative group is defined solely by persecutory conduct. It does not "exist independently of the persecution." *De Guevara v. Barr*, 919 F.3d 538, 540 (8th Cir. 2019) (internal quotation marks omitted); *Matter of W-G-R-*, 26 I. & N. Dec. 208, 215 (BIA 2014) ("Circuit courts have long recognized that a social

group must have 'defined boundaries' or a 'limiting characteristic,' other than the risk of being persecuted, in order to be recognized."). The putative group is comprised of people who suffered harm and have a well-founded fear of future harm. This description incorporates the test for asylum and withholding of removal. *See Rivas*, 899 F.3d at 541 ("An applicant is eligible for asylum if she is unable or unwilling to return to her country because of persecution or a well-founded fear of persecution . . . ." (internal quotation marks omitted)). The modifier "for which the Mexican government is unable and unwilling to control" also originates from the persecution test for when the harm is caused by a private actor. *See Prieto-Pineda*, 960 F.3d at 520. Thus, this social group is not cognizable because it is defined by legal conclusions from the persecution test.

### 2. *Political Opinion*

Ramos-Garcia also argues persecution on account of his anti-crime and anti-gang political opinion. The IJ and BIA rejected this argument because he did not show a nexus between the claimed political opinion and the harm. We review the BIA's nexus determination under the deferential substantial evidence standard and "will reverse only if we determine that a reasonable factfinder would have to conclude" that the protected ground motivated the persecutor's actions. *See Garcia-Moctezuma*, 879 F.3d at 869 (cleaned up).

We agree with the BIA's conclusion that Ramos-Garcia has not demonstrated that his claimed political opinion was one central reason for the harm he suffered in Mexico. *See Gomez-Rivera v. Sessions*, 897 F.3d 995, 999 (8th Cir. 2018) (denying asylum and withholding of removal because the evidence did not compel a finding that petitioner was persecuted for an anti-gang political opinion rather than a concern for recruiting new members and finding insufficient evidence that the gang attributed any political opinion to the petitioner); *Marroquin-Ochoma v. Holder*, 574 F.3d 574, 578–79 (8th Cir. 2009) (denying asylum to a petitioner who left Guatemala because gang members threatened and pressured her to join the gang); *Prieto-Pineda*, 960 F.3d at 521 (denying asylum and withholding of removal because "[a]lthough the Mara 18 gang may have some political motivations, the record here supports a

finding that Prieto-Pineda was harassed for refusing to provide rides, not for any political opposition to the gang”); *Garcia v. Holder*, 746 F.3d 869, 873 (8th Cir. 2014) (denying withholding of removal because “nothing in the record suggests that MS–13 targeted [petitioner] for political reasons” but “the gang [instead] attacked him for resisting its extortionate demands”).

Ramos-Garcia argues that he was stabbed for refusing to work with the gang, but “refusal to join the gang is not necessarily politically motivated.” *Marroquin-Ochoma*, 574 F.3d at 578–79. “[T]he mere refusal to join [a gang], without more, does not compel a finding that the gang’s threats were on account of an imputed political opinion.” *Id.* at 579. Ramos-Garcia has not shown that the criminals who harmed him attributed any political opinion to him, so he cannot show that his anti-gang or anti-crime political opinion was a central reason for any persecution.

### III. *Conclusion*

Accordingly, we deny the petition for review.

_____